Gordon STEIN d/b/a Stein & Associates, Appellant,

v.

Darwin DEASON, Appellee.

No. 05-03-01812-CV.

Court of Appeals of Texas, Dallas.

April 21, 2005.

Timothy D. Zeiger, McKinley & Zeiger, P.C., and Brent William Bailey, Dallas, for Appellant.

Steve Sumner, Sumner, Schick, Hamilton & Pace, and Jerrod L. Davis, Dallas, for Appellee.

Before Justices FITZGERALD, LANG, and LANG–MIERS.

## OPINION NUNC PRO TUNC

Opinion by Justice LANG.

We withdraw our January 10, 2005 opinion and issue this nunc pro tunc opinion in its place to correct the style of this case. The judgment remains unchanged.

In a single issue in this interlocutory appeal, Gordon Stein d/b/a Stein & Associates contends the trial court erred in overruling his special appearance in a suit brought by Darwin Deason. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon 2004–05). For the following reasons, we resolve Stein's issue against him and affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Deason, a Texas resident, hired Stein, a California resident, to produce architectural design work for residential construction on property Deason owned in California. This design work was completed in September 2001. According to Deason, on a visit to Deason in Dallas at an unspecified date in 2001, Stein represented to Deason that he was a licensed architect. In November 2002, Deason went to California to discuss with Stein modification of

the original design project. As a result of the meeting, Deason hired Stein for the "redesign" project. Stein was to: (1) make changes to the schematic design drawings developed during the original design project; (2) work with the local building officials and the local architectural review committee to obtain the necessary approvals and variances for the construction; and (3) work with Deason's Dallas, Texas general contractor.

In December 2002, Stein sent Deason an invoice respecting the redesign project for $35,000. Deason paid this invoice. Stein also quoted Deason a fee of more than $2 million for the entire redesign project. In March 2003, Stein completed the schematics and sent them to the general contractor. Later in March, Stein resigned from the redesign project, but he agreed to attend meetings with local building officials regarding approval and permits for the redesign. A newly-hired architect asked Stein for the original schematics and other materials that Stein prepared, including a license to use the schematics. Stein refused to release the documents unless he was paid for the meetings he attended with the local building officials after he announced his intention to resign.

Deason sued Stein asserting these causes of action: (1) violation of the Texas Deceptive Trade Practices Act arising from allegations that Stein represented that he was a licensed architect, when in fact he was not licensed; (2) breach of contract by refusing to deliver the schematics after resigning, attempting to collect a debt not owed, and failing to "acknowledge" the license; (3) fraud; and (4) violation of the Texas Debt Collection Practices Act. As damages, Deason requested (1) restitution of all consideration Deason paid to Stein, including payments for the original architectural design work and the $35,000 payment; (2) treble, mental anguish, and punitive damages; (3) pre- and post-judgment interest; (4) attorney's fees; and (5) all costs of court.

After Stein failed to answer, Deason obtained a default judgment. Subsequently, Stein filed a "Rule 120a Special Appearance," which was supported by a his affidavit, a "First Amended Rule 120a Special Appearance," and a "Motion for New Trial Subject to Rule 120a Special Appearance." The special appearance was set for a hearing. Deason moved for a continuance of the hearing on the special appearance and filed a response to Stein's special appearance, supported by affidavits. Following a hearing, the trial court signed an order overruling Stein's special appearance. This accelerated appeal timely followed. *See* TEX.R.APP. P. 28.1.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

■■■ "[P]ersonal jurisdiction concerns the court's power to bind a particular person or party." *CSR Ltd., v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding). A special appearance is used to challenge the trial court's jurisdiction over the person based on the claim that such person is not amenable to process in this State. *See* TEX.R. CIV. P. 120a.

■■■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Id.* The exercise of personal jurisdiction over a nonresident is ultimately a question of law that often requires the resolution of factual issues as well. *Kytel Int'l Group, Inc. v. Rent–A–Ctr., Inc.,* 132 S.W.3d 717, 719 (Tex.App.-

Dallas 2004, no pet.) (citing *Marchand*, 83 S.W.3d at 794). We review the trial court's fact findings for legal and factual sufficiency, but conduct a *de novo* review of its legal conclusions. *Id.* Because the trial court did not file findings of fact and conclusions of law in this case, we imply all findings of fact necessary to support the trial court's order that are supported by the evidence. *Id.* at 720 (citing *Marchand*, 83 S.W.3d at 795). The trial court's order overruling Stein's special appearance states that the trial court considered Stein's special appearance, Deason's response, original petition, and motion for default judgment, the affidavits on file, and the arguments of counsel. Accordingly, the record reflects that the trial court did not consider any evidence offered at the hearing on the special appearance, and there is no reporter's record of the hearing in the appellate record.

■■ A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with the due process clause of the United States Constitution. *Marchand*, 83 S.W.3d at 795. The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident that does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The long-arm statute defines "doing business" as (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas, (2) commission of a tort in whole or in part in Texas, (3) recruitment of Texas residents, directly or through an intermediary located in Texas, or (4) performance of any other acts that may constitute doing business. *Id.* The broad language of the long-arm statute permits a Texas court to exercise jurisdiction as far as the federal constitution will

permit. *Marchand*, 83 S.W.3d at 795. Consequently, in determining whether jurisdiction exists, we need only determine whether the exercise of jurisdiction comports with the due process clause of the United States Constitution. *See City of Riverview, Mich. v. Am. Factors, Inc.*, 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.).

■ The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Federal due process requires the defendant to "purposefully avail" itself of the privilege of conducting activity within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). While not determinative, foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established minimum contacts with the forum state. *Marchand*, 83 S.W.3d at 795.

■ A defendant's contacts with a forum state may give rise to either general or specific jurisdiction. *Id.* at 795–96. The issue in this appeal is whether specific personal jurisdiction vested. Specific jurisdiction exists if the defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those

activities. *Magic House AB v. Shelton Beverage L.P.*, 99 S.W.3d 903, 908 (Tex.App.-Dallas 2003, no pet.). The defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In analyzing minimum contacts, it is not the number, but rather the quality and nature of the nonresident defendant's contacts with the forum state that are important. *Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 483–84 (Tex.App.-Dallas 2003, no pet.). In determining specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991).

In addition to minimum contacts with the forum state, personal jurisdiction requires that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. *Marchand*, 83 S.W.3d at 795. In determining whether the exercise of jurisdiction will offend traditional notions of fair play and substantial justice, the following factors are considered: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Guardian Royal*, 815 S.W.2d at 228. Consideration of the fair-play analysis is separate and distinct from the minimum-contacts issue. It is unlikely that the exercise of jurisdiction will fail the fair-play analy-sis because the minimum-contacts analysis encompasses so many considerations of fairness. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357–58 (Tex.1990).

## III. DISCUSSION

The original petition did not recite personal jurisdictional facts. Stein met his initial burden by pleading in the special appearance that he was a resident of California, not Texas. *See Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex.App.-Dallas 1993, writ dism'd by agr.). However, we must consider other jurisdictional facts alleged by Deason in his response to the special appearance. There, Deason alleged certain facts to support specific jurisdiction. He supported his response with his own affidavit and that of his contractor. Specifically, Deason claimed that (1) Stein misrepresented that he was a licensed architect when he came to Dallas on an unspecified date in 2001 on the original design project, and because he did not make a representation later in the redesign transaction, Deason continued to believe that Stein was an architect and relied on that representation in Texas; (2) Stein sent a letter to Texas in which he threatened to withhold the schematics unless he was paid a disputed debt; and (3) the agreement as to the redesign project was performable in part in Texas since Stein was to send and did send the schematics to the general contractor in Dallas for review and approval, Stein talked by telephone to the contractor three times about the plans, Stein talked by telephone to Deason about progress, and payment was sent by Deason from Dallas.

### A. Consideration of the Affidavits Filed by Deason

First, we address Stein's contention that Deason's affidavits were untimely

served and should not have been considered by the trial court as evidence. The affidavits were attached to the response, which was served the same day as the special appearance hearing. *See* TEX.R. CIV. P. 120a(3) (providing that all affidavits be "served at least seven days before the [special appearance] hearing"). The record shows that Deason filed a "Motion for Continuance of the Hearing on Defendant's Rule 120a Special Appearance" in which, as an alternative to a continuance, he requested that the seven-day requirement for the service of affidavits be waived. Although there is no written order in the record, a docket sheet entry shows the trial court granted Deason leave to file his affidavits. On appeal, Stein argues that because the hearing was non-evidentiary, the trial court had no factual basis justifying its decision to grant leave to file the affidavits on the day of the hearing. However, the verified motion for continuance explained the reason for the late filing. Moreover, the record does not show that Stein responded to the motion for continuance or objected to the timeliness of the affidavits or going forward with the hearing. *See S.P.A. Giacomini v. Lamping*, 42 S.W.3d 265, 269–70 (Tex. App.-Corpus Christi 2001, no pet.). Accordingly, we reject Stein's arguments that the trial court should not have considered Deason's affidavits as evidence.

## B. Specific Jurisdiction

Second, we address whether the evidence is legally and factually sufficient to support the trial court's implied findings that the claimed contact established specific jurisdiction under the tort or contract theories alleged.

Stein argues that for there to be specific jurisdiction, there must be a nexus between the particular transaction at issue and the elements of the causes of action

sued upon. *See Schlobohm*, 784 S.W.2d at 358 ("The cause of action must arise from, or be connected with, such act or transaction."). In his affidavit, Stein contends that the alleged misrepresentation that he was a licensed architect was made in connection with the separate, prior completed design project. Hence, he says, there is no nexus between the misrepresentation and the redesign project, which he says is the subject of the suit. The first transaction was the design of a home on property Deason owned in California, and the second transaction was the redesign of that home.

Deason, on the other hand, claims the transactions are connected and both found the basis of his suit. According to Deason's affidavit, Stein completed the first design project in September 2001. Then, later, but it is unclear when, Deason went to California to meet with Stein to engage him for the redesign as a separate transaction. According to Deason, the alleged misrepresentation by Stein that he was a licensed architect took place in Dallas only as to the first, completed transaction on an unspecified date in 2001. There is no allegation that Stein made any such representation during the second transaction. Yet, Deason claims, in his affidavit, that the alleged misrepresentation was not retracted and he "relied upon" that representation "in making the decision to hire Stein as my architect in the [r]edesign."

Stein's distinction between the transactions is not determinative. We note that Deason's claims include fraud and restitution of fees from the original design project as well as the redesign project.

The authorities respecting specific jurisdiction cited by the parties are not in disagreement. They direct us to evaluate the nature and quality of the defendant's acts. *See Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806 (citing

*Guardian Royal Exch. Assurance Ltd.,* 815 S.W.2d at 230 n. 11); *see also Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. 2174. We must determine if the defendant "purposefully established 'minimum contacts'" with Texas. *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 226–27. Additionally, due process requires that a defendant not be haled into Texas court unless his activities should have led him to reasonably anticipate being answerable here. *Schlobohm,* 784 S.W.2d at 359; *City of Riverview, Mich.,* 77 S.W.3d at 858. Accordingly, a court must consider "foreseeability," meaning that "[w]here a defendant sends false information into a state, knowing it will be relied upon by a resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile." *Shapolsky v. Brewton,* 56 S.W.3d 120, 134 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ)).

In the authorities offered by Deason, the analysis in each case began with review of a telephone call made between the plaintiff, in Texas, and the alleged tortfeasor in another state, where the alleged tortfeasor induced the plaintiff to act in reliance upon the representation made. *Michiana Easy Livin' Country Inc. v. Holten,* 127 S.W.3d 89, 94, 96–97 (Tex.App.-Houston [1st Dist.] 2003, pet. granted); *Boissiere v. Nova Capital, LLC,* 106 S.W.3d 897, 902–04 (Tex.App.-Dallas 2003, no pet.); *Shapolsky,* 56 S.W.3d at 126, 132–34; *Mem'l Hosp. Sys.,* 835 S.W.2d at 650–51. It is readily apparent in the facts described in each case that the plaintiff claimed that he relied upon the representation of the defendant and was injured.

The jurisdictional facts alleged by Deason cannot be evaluated in isolation from the claims alleged. While the merits of the claim are not to be determined at this stage, we must, nevertheless, view the facts alleged in the context of the tort alleged to have been committed in whole or in part in Texas. *See Bruno's Inc. v. Arty Imports, Inc.,* 119 S.W.3d 893, 897 (Tex.App.-Dallas 2003, no pet.); *Portland Sav. & Loan Ass'n v. Bernstein,* 716 S.W.2d 532, 535 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.), *overruled on other grounds by Dawson–Austin v. Austin,* 968 S.W.2d 319, 323 (Tex.1998); *Arterbury v. Am. Bank & Trust Co.,* 553 S.W.2d 943, 947 (Tex.Civ.App.-Texarkana 1977, no writ). Of course, Deason claims Stein's representation that he was a "licensed" architect is the basis for his fraud claim. Fraud is "a two-element tort which is not actionable until relied upon to the detriment of the person to whom the representations were made." *Hoppenfeld v. Crook,* 498 S.W.2d 52, 56 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.); *see Valsangiacomo v. Americana Juice Import, Inc.,* 35 S.W.3d 201, 210 (Tex.App.-Corpus Christi 2000, no pet.) (where "[a]n essential element of a fraud claim is reliance on the misrepresentation": no specific jurisdiction where shipment of product, alleged as basis of fraudulent inducement claim, could not have induced buyer to enter contract when contract was in place prior to shipment).

The critical element of inducement in a fraud claim is sufficiently alleged where Deason states (1) he never would have hired Stein had he known he was not licensed, and (2) he relied upon Stein's 2001 representation that he was a "licensed" architect when he decided to hire Stein for the redesign project in 2002. *Cf. Valsangiacomo,* 35 S.W.3d at 210. However, we must go further and evaluate whether the alleged misrepresentation, made in Texas, was "purposeful" and

the injury to Deason in Texas was "foreseeable." The purposefulness of the Texas contact, that is, the representation made in Dallas, is not addressed by Stein in his affidavit. Stein admits he came to Texas respecting the design project. He does not deny he made the representation. Likewise, Stein does not shed any light on the foreseeability issue. In fact, Deason's claim of reliance upon the representation in deciding to hire Stein on the redesign project is unassailed. Stein asserts only that his visit to Dallas was regarding the original design project. We conclude that Stein should have understood that the consequences of his having made the representation in Texas could reasonably lead to being haled into court in Texas. Moreover, our courts have concluded that telephone calls, alone, can be a sufficient contact. The fact that Stein made the representation to Deason while physically present in Dallas is significant. Deason has met his burden of presenting sufficient jurisdictional facts. Accordingly, the allegations are legally and factually sufficient to support the trial court's implied finding that Stein purposefully established minimum contacts with Texas so that specific jurisdiction exists.

■ Next, we must address the concept of "fair play and substantial justice." This analysis is separate and distinct from the minimum contacts analysis. *See Marchand,* 83 S.W.3d at 795.

As we see it, Stein raises three points on this issue. First, he claims that the burden on him is "pronounced" since the location of performance, the real estate, and some of the witnesses is in California. Second, he claims he is not required by California law to be "licensed" as an architect to provide architectural services, so the issue of how California regulates building design and construction is not compelling for Texas. Third, he contends that "permitting this suit to go forward on the basis of a few letters, phone calls, and invoices sent to [Deason] in Texas" would "offend the notion of fair play and substantial justice." We do not agree with Stein's contentions.

■ We note that once a court determines that a nonresident defendant has purposefully established minimum contacts, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 231. The case before us does not present such a rare case. First, the fact that Stein resides in California is not persuasive in deciding personal jurisdiction. *See Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174. Nothing in the record indicates that litigation in Texas would be excessively burdensome or inconvenient to Stein. Second, the State of Texas has a strong interest in regulating commercial transactions with its citizens, especially where a tort is alleged to have been committed in whole or in part in Texas, in conjunction with the commercial transaction. *See Shapolsky,* 56 S.W.3d at 134–35. The jurisdictional allegations do not necessarily implicate the alleged California policy and law respecting licensure of architects. Deason claims, simply, that Stein represented, in Texas, that he was a "licensed" architect. Deason contends he never would have hired Stein "on the [r]edesign, or at all," had he known Stein was not licensed. Whether Stein complied with California law respecting performance of architectural services is not part of Deason's complaint. Finally, we cannot focus, as does Stein, only on mail and telephone contacts. Deason's claim, not contradicted by Stein, that Stein made the critical alleged misrepresentation while he was present in Dallas, tilts toward a conclusion that the exercise of specific jurisdiction would not offend traditional notions of fair play and substantial justice. *See Marchand,* 83 S.W.3d at 795.

We conclude that the evidence is legally and factually sufficient to support the trial court's implied finding that the exercise of specific jurisdiction over Stein does not offend traditional notions of fair play and substantial justice.

Having concluded that the there is specific jurisdiction over Stein in the trial court, we need not address the balance of the parties' arguments.

## IV. CONCLUSION

In our *de novo* review of the trial court's denial of Stein's special appearance, we carefully scrutinize whether the quality and nature of the acts alleged to provide the jurisdictional contact reflect that they have been "purposefully directed" to the state of Texas. Whether the facts alleged in this case to support a finding of personal jurisdiction are considered individually or in the aggregate, we conclude that the tests required by due process and Texas precedents are met. We resolve Stein's issue against him. The trial court's order overruling Stein's special appearance is affirmed.