MEMORANDUM OPINION



No. 04-07-00708-CV



Marisa Roylene Spears STEPHENSON,


Appellant



v.



Robert W.S. STEPHENSON,


Appellee



From the 225th Judicial District Court, Bexar County, Texas


Trial Court No. 2007-CI-10412


Honorable Peter Sakai, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice


Delivered and Filed: February 13, 2008


AFFIRMED

 Marisa Roylene Spears Stephenson appeals the trial court's order denying her special
appearance. We affirm the trial court's order.

Background


 Robert and Marisa were married in September of 2005 while Robert was in the military. 
Robert returned to his base in Alaska while Marisa continued to live in California. Prior to his
marriage, Robert had executed a special power of attorney in favor of his mother and step-father,
Luana A. and Michael D. Schneider, giving them authority over Robert's financial affairs.

 In June of 2006, Robert was deployed to Iraq. Just prior to his deployment, Robert executed
a general power of attorney in favor of Marisa, giving her the power to make medical decisions in
case he was injured. On November 25, 2006, Robert was injured in Iraq, suffering burns over 70%
of his body and requiring his lower left leg to be amputated. Robert was transferred to Brooke Army
Medical Center ("BAMC") in San Antonio for treatment. The military paid to transport both the
Schneiders and Marisa to San Antonio.

 On November 28, 2006, Major Lorraine Rowbo, a lawyer from the Judge Advocate General's
office at BAMC, was requested to review the powers of attorney and determine who had the
authority to make medical decisions for Robert. Rowbo met with the Schneiders and Marisa. 
Rowbo informed them that Marisa's power of attorney gave her the authority to make medical
decisions while the Schneiders' power of attorney gave them the power to control Robert's financial
affairs.

 Due to his injuries, Robert was eligible for Combat-Related Injury and Rehabilitation Pay
("CIP"). CIP is available until an individual receives Traumatic Injury Protection ("TSGLI"), which
is a disability insurance benefit solely for the use and benefit of a soldier suffering a traumatic injury
and is intended to help get wounded soldiers back on their feet and start their life over. On
December 1, 2006, without any discussion with Robert, Marisa applied for the TSGLI benefit using
her general power of attorney. The $100,000.00 TSGLI benefit was deposited into Marisa's bank
account in California at her request. Robert was not a signatory on this account.

 Sometime in January of 2007, Marisa left San Antonio and went to live with her mother in
Maryland. Robert filed for divorce in Kansas around January 19, 2007. After discovering that he
was not being paid CIP because Marisa had applied for and received the TSGLI benefit, Robert sued
Marisa in Texas for breach of fiduciary duty, violations of the Texas Theft Liability Act, and
conversion. Marisa filed a special appearance, asserting that she does not have sufficient minimum
contacts with Texas to be subject to its jurisdiction. After an evidentiary hearing, the trial court
denied the special appearance.

Standard of Review


 The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident
defendant within the provisions of the long-arm statute. Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002). Upon filing a special appearance, the nonresident
defendant then assumes the burden to negate all the bases of personal jurisdiction alleged by the
plaintiff. Id. Whether a court has personal jurisdiction over a defendant is a question of law;
however, the trial court frequently must resolve questions of fact before deciding the jurisdictional
question. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). On appeal,
we review the findings of fact for legal and factual sufficiency. See id. We review the conclusions
of law drawn from the findings of fact de novo. Id. at 794.

Discussion


 Texas courts may exercise "in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent
with federal and state constitutional due-process guarantees." Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute enables Texas courts to exercise
jurisdiction over a nonresident defendant that "does business" in Texas. Tex. Civ. Prac. & Rem.
Code Ann. § 17.043-.044 (Vernon 1997); BMC Software Belgium, N.V., 83 S.W.3d at 795. The
definition of "doing business" in Texas includes committing a tort in whole or in part in Texas. Tex.
Civ. Prac. & Rem. Code Ann. § 17.042(2) (Vernon 1997). Robert's breach of fiduciary duty and
conversion claims satisfy the doing-business requirement for jurisdiction under the Texas long-arm
statute. See Moki Mac River Expeditions, 221 S.W.3d at 574-75. Therefore, we need only consider
whether the exercise of jurisdiction in this case comports with federal due process limitations. Id.
at 575.

 Federal due process requirements permit the exercise of personal jurisdiction over a
nonresident defendant when: (1) the nonresident defendant has established minimum contacts with
the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and
substantial justice. Id. Minimum contacts are sufficient if the nonresident defendant purposefully
avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits
and protection of its laws. Id. In determining whether minimum contacts exist, the defendant's
contacts must: (1) justify a conclusion that the defendant could reasonably anticipate being haled into
a Texas court; (2) be purposeful rather than fortuitous; and (3) show the defendant sought some
benefit, advantage, or profit by availing himself of the jurisdiction. See Michiana Easy Livin'
Country, Inc. v. Holten, 168 S.W.3d 777, 185 (Tex. 2005); Petrie v. Widby, 194 S.W.3d 168, 174-75
(Tex. App.--Dallas 2006, no pet.). We focus on whether there is a substantial connection between
the defendant's contacts and the operative facts of the litigation. Moki Mac River Expeditions, 221
S.W.3d at 585; Petrie, 194 S.W.3d at 175.

 In this case, the evidence presented at the hearing established that Marisa traveled to Texas
and remained in Texas for approximately two months while Robert was being treated at BAMC. 
Marisa was provided housing at BAMC and received a portion of Robert's base housing allowance
which she may have deposited into a bank account she opened in Texas. (1) While residing in Texas,
Marisa met with Rowbo who explained the authority given to Marisa under the general power of
attorney. Although Marisa denies that Rowbo told her that the Schneiders' power of attorney gave
them the authority to handle Robert's financial affairs, Rowbo testified that she so informed Marisa. 
Robert testified that Marisa never discussed applying for the TSGLI benefit with him. Nevertheless,
at the wounded warriors' office in the basement of BAMC, Marisa completed the application for the
TSGLI benefit using her general power of attorney and requested that the funds be deposited into her
bank account in California. Marisa subsequently left Texas without informing Robert that she had
applied for and received the TSGLI benefit and had at least 80% of that money remaining in her bank
account. Through these purposeful contacts, Marisa "should have realized the consequences of
having [taken these actions] in Texas could reasonably lead to her being haled into court in Texas." 
Petrie, 194 S.W.3d at 175. The fact that Marisa took these actions while physically present in Texas
is significant. See Stein v. Deason, 165 S.W.3d 406, 415 (Tex. App.--Dallas 2005, no pet.). 
Marisa's actions are vastly different than the isolated telephone calls, single sales or marketing
efforts typically analyzed in these types of cases. See Moki Mac River Expeditions, 221 S.W.3d at
576-79; Michiana Easy Livin' Country, Inc., 168 S.W.3d at 784-88. The allegations and evidence
presented at the hearing support the trial court's implied finding that Marisa purposefully established
minimum contacts with Texas so that specific jurisdiction exists.

 With regard to whether the exercise of personal jurisdiction comports with traditional notions
of fair play and substantial justice, we consider the following factors: (1) the burden on the
defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest
in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining
the most efficient resolution of controversies; and (5) the shared interest of the several states in
furthering fundamental substantive social policies. See Stein, 165 S.W.3d at 412. Only in rare cases
will the exercise of jurisdiction not comport with fair play and substantial justice when specific
jurisdiction has been established. See id.

 In this case, although Marisa will be required to travel to Texas for trial, the fact that she
resides out-of-state is not persuasive. See id. at 415. Texas's interest in adjudicating the dispute is
significantly strong, especially considering the vulnerable nature of wounded soldiers seeking
treatment at BAMC. For this same reason, jurisdiction in Texas would be supported by the shared
states' interest in furthering fundamental substantive social policies. Texas's interest also is
strengthened by the fact that Marisa was personally present in the State when she is alleged to have
committed the tort which also makes Texas an efficient forum to resolve the controversy. See id.;
see also Petrie, 194 S.W.3d at 176. Accordingly, the exercise of personal jurisdiction comports with
traditional notions of fair play and substantial justice.

Conclusion


 The trial court's order is affirmed.

 Alma L. López, Chief Justice
1. Luana Schneider testified that Marisa had opened such an account although Marisa denied opening an account
in Texas.