Affirmed and Opinion filed October 7, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00852-CV

___________________

 

Horizon Shipbuilding, Inc., Travis R. Short,
and Ben Forrest, Appellants

 

V.

 

BLyn II Holding, LLC, Appellee



 



 

On
Appeal from the 56th District Court

Galveston County,
Texas



Trial Court Cause No. 08-CV-0445

 



 

 

OPINION

            In this interlocutory
appeal, appellants, Horizon Shipbuilding, Inc. (“Horizon”), Travis R. Short,
and Ben Forrest, challenge the trial court’s denial of their special
appearance.  Concluding the Texas court has personal jurisdiction over
appellants, we affirm.

I.  Factual and Procedural Background

            This
case arises from a dispute between a Texas corporation and an Alabama
corporation and its principals.  Appellee, BLyn II Holding, LLC (“BLyn”) is a
Texas Corporation.  Horizon is an Alabama corporation.  Short, the president
and general manager of Horizon, resides in Mississippi.  Forrest, a project
manager for Horizon and director of operations for Crimson, an unincorporated
division of Horizon, resides in Alabama. The dispute involves a motor yacht,
the MY Betty Lyn II, which BLyn had purchased to refurbish and
refit as a charter vessel.  The yacht was moored in Galveston County.

            In April 2006, Horizon, acting through
Short and Forrest, represented to BLyn that Horizon could refurbish and outfit
the yacht for an estimated but set price.  BLyn paid to have the yacht hauled
to Alabama, and Horizon received the yacht at its Alabama shipyard in June
2006.  On August 1, 2006, Horizon, acting through Crimson, executed a time and
materials contract with BLyn for Horizon to perform the work on the yacht in
Alabama. The contract also purportedly contained an Alabama choice-of-law
provision.[1]

            In late September 2006, James McCord, a
member of BLyn, sent an email to Short and Forrest informing them of an October
5 meeting in Houston “to discuss documentation and financing for the boat, draw
schedule for the bank, valuations of the boat as the refit progresses, final
plans for the interior and exterior, legal issues, and other topics that may
arise during the meeting.”  Short responded that he and Forrest planned to
attend.  According to McCord, at the October 5 meeting, they “[s]pecifically
discussed . . . a budget for refinishing the vessel of approximately $4,500,000
to be paid to Horizon for its employees’ labor and materials on the project.”

            Short and Forrest again met with McCord
in Houston on March 4, 2008.  At this meeting, Short presented an estimated
completion cost of over $9,000,000.  On March 17, Short wrote to McCord
attributing the extended duration of the project to initial delays, owner-furnished
drawings, and change orders.  Short offered to reduce the completion costs by
$100,000.

            Shortly thereafter, BLyn sued appellants. 
BLyn alleged claims for breach of contract, common-law fraud, fraud by
nondisclosure and fraudulent inducement, negligent misrepresentation, and
accounting.  On July 18, 2008, appellants filed a special appearance and an original
answer. Appellants did not request the special appearance be set for a hearing.
 On February 9, 2009, all parties filed a joint motion for continuance.  On
June 5, 2009, all parties filed a second joint motion for continuance.  On July
13, 2009, appellants noticed a special appearance hearing for the following
month.  By the hearing date, BLyn had filed a third amended petition.  BLyn alleged
appellants, while in Houston, had made false representations and had concealed
or failed to disclose facts regarding the cost of the work and use of the
workers. 

In response to appellants’
special appearance, BLyn argued (1) appellants had waived the special
appearance by waiting over a year to set it for a hearing and requesting
affirmative relief from the court in the interim and (2) the court had specific
jurisdiction over appellants because appellants committed a tort in Texas.  After
hearing argument and admitting the parties’ documentary evidence, the court
denied the special appearance by written order signed September 9, 2009. 
Although requested by Horizon, the trial court did not file findings of facts
and conclusions of law.[2] 
This appeal followed.           




 

II.  standard of Review

            In their sole issue on appeal, appellants
argue the trial court erred in denying their special appearance.  The existence
of personal jurisdiction is a question of law.  BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  On appeal, we consider all of
the evidence before the trial court on the question of jurisdiction.  Fish
v. Tandy Corp., 948 S.W.2d 886, 891 (Tex. App.—Fort Worth 1997, writ
denied).

When a trial court does not
issue findings of fact and conclusions of law with its special appearance
ruling, all facts necessary to support the judgment and supported by the
evidence are implied.  BMC Software, 83 S.W.3d at 795.  Absent a
complete record on appeal, we will presume the omitted items supported the
trial court’s judgment.  See Bennett v. Cochran, 96 S.W.3d 227, 230
(Tex. 2002) (per curiam) (approving general rule that, absent a complete record
on appeal, court of appeals must presume omitted items support trial court’s
judgment).  

III.  Waiver

            At trial, BLyn asserted appellants waived
their special appearance because they did not set the hearing on the special
appearance for approximately a year, during which they filed two joint motions
for continuance.  Appellants contend that the trial court’s denial of their
special appearance cannot be affirmed on such grounds.  We agree.  

A.               
Delay in Setting a Hearing does not Waive a Special Appearance.

BLyn has not cited any
authority for the proposition that a nonresident defendant waives its special
appearance by waiting approximately a year before setting a hearing on it, nor
have we found any support for this assertion.  See Peninsula Asset Mgmt.
(Cayman) Ltd. v. Hankook Tire Co., Ltd., No. 02-04-00254-CV, 2006 WL
1030185, at *4 (Tex. App.—Fort Worth, Apr. 20 2006, pet. denied) (mem. op.) (holding
appellee did not waive special appearance by delaying hearing over eighteen
months); cf. Michiana Easy Livin’ Country, Inc. v. Holten, 168
S.W.3d 777, 793 (Tex. 2005) (observing, in context of deciding whether forum-selection
clause was waived, special appearance was decided two years after filing but record
reflected little activity other than special appearance).  The rule requires
only that jurisdictional challenges be heard and determined “before any other
plea or pleading may be heard.”  See Tex.
R. Civ. P. 120a(2).  Delay in setting the hearing did not waive the
special appearance.

            B.        Joint Motions for
Continuance do not Waive a Special Appearance.

            BLyn contends the defendants waived their
special appearance by filing two joint motions for continuance before setting
the special appearance for a hearing.  According to BLyn, a motion for
continuance is a request for affirmative relief inconsistent with the
defendants’ assertion the district court lacks jurisdiction.  We disagree.

A party enters a general
appearance when it (1) invokes the judgment of the court on any question
other than the court’s jurisdiction, (2) recognizes by its acts that an
action is properly pending, or (3) seeks affirmative action from the
court.  Exito Elecs. Co., Ltd. v. Trejo, 142 S.W.3d 302, 304 (Tex. 2004)
(per curiam); Dawson-Austin v. Austin, 968 S.W.2d 319, 322 (Tex. 1998).
(per curiam).  The rule governing special appearances, however, specifically
provides for continuances.  See Tex. R. Civ. P. 120a(3).[3]

Citing Dawson-Austin
and Exito Electronics, BLyn contends a defendant may “obtain some
limited affirmative relief from the trial court concerning matters relating to
the special appearance without waiving the special appearance,” but the
defendant recognizes that a lawsuit is properly pending if it requests a
continuance “of the entire case.”  Dawson-Austin, however, stands
for the opposite of this proposition.  In that case, the Texas Supreme Court
held a nonresident defendant did not waive her special appearance by filing a
motion for continuance in which she “asked the court to defer action on all
matters.”  Dawson-Austin, 968 S.W.2d at 323.

We decline to hold that a
joint motion for continuance of the entire case waives a special appearance.

IV. Personal
Jurisdiction

            A.        The Long-Arm Statute Reaches
as far as Federal Due Process Allows.

            Texas courts may assert personal jurisdiction
over a nonresident if (1) the Texas long-arm statute authorizes the exercise of
jurisdiction, and (2) the exercise of jurisdiction is consistent with federal
and state constitutional due-process guarantees.  Moki Mac River Expeditions
v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  The long-arm statute provides
in relevant part:

In addition to other acts that
may constitute doing business, a nonresident does business in this state if the
nonresident:

(1)       contracts by mail or otherwise
with a Texas resident and either party is to perform the contract in whole or
in part in this state;

(2)       commits
a tort in whole or in part in this state . . . .

Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (Vernon 2008).

The “doing business”
language “allows the statute to ‘reach as far as the federal constitutional
requirements of due process will allow.’”  Moki Mac, 221 S.W.3d at 575
(quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex.1991)).  Therefore, when a jurisdictional assertion
accords with federal due process standards, the Texas long-arm statute
requirements are also satisfied.  Id.

As set forth above, BLyn
alleged appellants committed the torts of common-law fraud, fraud by
nondisclosure and fraudulent inducement, and negligent misrepresentation in
Houston.  Thus, BLyn alleged appellants did business in the state by committing
a tort in the state, so as to bring them under the long-arm statute.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042; Tempest Broadcasting Corp. v. Imlay, 150 S.W.3d 861, 871 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).

B.                
Due Process Requires Purposeful Availment.

State statutory and federal
due-process requirements are satisfied if (a) the nonresident has minimum contacts
with Texas, and (b) exercise of personal jurisdiction over the nonresident does
not offend traditional notions of fair play and substantial justice.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868,
1872, 80 L. Ed. 2d 404 (1984).  Minimum contacts suffice for personal
jurisdiction when the nonresident purposefully avails itself of the privilege
of conducting activities within the forum state, and thus invokes the benefits
and protections of its laws.  Moki Mac, 221 S.W.3d at 575.

The “purposeful availment”
inquiry has three parts.  Id.  First, only the defendant’s contacts with
the forum are relevant.  Id.  Second, the contacts on which jurisdiction
depends must be purposeful, rather than random, fortuitous, or attenuated.  Id. 
Third, “the ‘defendant must seek some benefit, advantage or profit by
“availing” itself of the jurisdiction.’”  Id.  (quoting Michiana,
168 S.W.3d at 785).

The Texas contacts on which
BLyn relies are the October 5, 2006 and March 4, 2008 meetings in Houston,
which Short and Forrest attended, and telephone calls from Horizon to a number
associated with James McCord.  These “contacts” are equally relevant to Short,
Forrest, and Horizon.  

It is undisputed Short is
the president and general manager of Horizon.  Appellants nevertheless argue,
“Short’s activities for Horizon are not based on a principal/agent
relationship.”  Appellants then assert, “Unlike the voluntary establishment of
an agency relationship, corporations may only act through individuals.” 
Appellants provide no authority for this assertion and do not explain how it
supports their argument that Short was not acting as an agent for Horizon.  

It is also undisputed that
Forrest is a project manager for Horizon and director of operations for Crimson. 
Although they have more than once represented that Crimson is an unincorporated
division of Horizon, appellants argue Crimson’s activities may not be
attributed to Horizon.  We disagree.  See W. Beef, Inc. v. Compton
Inv. Co., 611 F.2d 587, 591 (5th Cir. 1980). (“A division of a corporation
is not a separate legal entity but is the corporation itself.”).

Despite appellants’ contentions
to the contrary, we attribute Short’s and Forrest’s actions to Horizon.  See
Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995) (“As a general rule,
the actions of a corporate agent on behalf of the corporation are deemed the
corporation’s acts.”); Huynh v. Nguyen, 180 S.W.3d 608, 620 (Tex. App.—Houston
[14th Dist.] 2005, no pet.) (“The Texas contacts of agents or employees are
attributable to their nonresident principals.”).  

Appellants admit Short and
Forrest attended the meetings in Texas and made telephone calls “in” Texas. 
Appellants, however, contend those two trips and telephone calls lack the
significance BLyn attributes to them because they are isolated, incidental, and
attenuated contacts.

“[T]he minimum-contacts
analysis is focused on the quality and nature of the defendant’s contacts,
rather than their number.”  Retamco Operating, Inc. v. Republic Drilling Co.,
278 S.W.3d 333, 339 (Tex. 2009).  “Even a single act can support jurisdiction
so long as it is substantial.”  Tempest Broadcasting, 150 S.W.3d at 875.

According to the special
appearance evidence, the purpose of the October 5, 2006 meeting was “to discuss
documentation and financing for the boat, draw schedule for the bank,
valuations of the boat as the refit progresses, final plans for the interior
and exterior, legal issues, and other topics that may arise during the
meeting.”  Thus, although the parties had executed the written contract before
the meeting, the trial court could reasonably have found that critical aspects
of the refurbishment plans remained to be, and were, determined at the October
2006 meeting.  The court could further have found the meeting constituted a
significant part of an ongoing relationship among the parties.[4]  Additionally,
given the purpose of the October 2006 meeting and the attendance of a
representative of the bank, the court could have found the representations
Short and Forrest made at that meeting were a determinative factor in BLyn’s
obtaining final funding for the project.

From the preceding findings,
the trial court then could have concluded the October 5, 2006 meeting alone was
“substantial.”  From such findings, the trial court could also have concluded
it was foreseeable that any disputes deriving from that meeting might be heard
by a Texas court.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462,
474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (stating foreseeability critical
to due process analysis is that defendant’s conduct and connection with forum
state are such he should reasonably anticipate being haled into court there).

The court could have further
concluded the two Houston meetings were purposeful, and not random or
fortuitous.  James McCord did not compel Short and Forrest to attend the
October 2006 meeting in Houston.  Rather, in his email, McCord stated he wanted
to make sure all parties were aware of the meeting and requested the email
recipients to let him know whether they could attend.  The fact Short and
Forrest made the alleged misrepresentations while physically present in Houston
is significant.  See Stein v. Deason, 165 S.W.3d 406, 415 (Tex. App.—Dallas
2005, no pet.).

Appellants nevertheless argue,
“The contract performance and its choice of law provisions are significant.”  The
contract itself is not part of the record.  We therefore do not know the precise
parameters of the choice-of-law provision or whether the contract contained an
express understanding the parties would submit disputes to Alabama courts.[5]  Instead, we must assume
the content of the contract would support the trial court’s judgment.  See
Bennett, 96 S.W.3d at 230.

Finally, given what we can
infer from the record before this court, we conclude the trial court could
reasonably have found appellants sought to profit from making representations
about the cost of labor and materials to refurbish the yacht.

C.               
Liability Must “Arise Out Of” or be “Related To” the Contacts.

            Specific jurisdiction is established if
the defendant’s alleged liability arises out of or is related to an activity
conducted within the forum.  Helicopteros, 466 U.S. at 414 n.8, 104 S.
Ct. at 1872 n.8.  The relevant test is whether a substantial connection exits
between appellants’ contacts with Texas and the operative facts of the
litigation.  See Moki Mac, 221 S.W.3d at 576, 585.

BLyn alleged common-law
fraud, fraud by nondisclosure and fraudulent inducement, and
negligent-misrepresentation.  The elements of fraud are (1) a material
representation was made, (2) the representation was false, (3) when the
representation was made, the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion, (4) the speaker
made the representation with the intent that the other party should act upon it,
(5) the party acted in reliance on the representation, and (6) the party
thereby suffered injury.  Aquaplex, Inc. v. Rancho La Valencia, Inc.,
297 S.W.3d 768, 774 (Tex. 2009) (per curiam).  The elements of fraud by
nondisclosure are  (1) the defendant failed to disclose facts to the plaintiff,
(2) the defendant had a duty to disclose those facts, (3) the facts were
material, (4) the defendant knew the plaintiff was ignorant of the facts and
the plaintiff did not have an equal opportunity to discover the facts, (5) the
defendant was deliberately silent when it had a duty to speak, (6) by failing
to disclose the facts, the defendant intended to induce the plaintiff to take
some action or refrain from acting, (7) the plaintiff relied on the defendant’s
nondisclosure, and (8) the plaintiff was injured as a result of acting without
that knowledge.  7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.,
245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). 
The elements of negligent misrepresentation are (1) the representation is made
by a defendant in the course of his business, or in a transaction in which he
has a pecuniary interest, (2) the defendant supplies “false information” for
the guidance of others in their business, (3) the defendant did not exercise
reasonable care or competence in obtaining or communicating the information,
and (4) the plaintiff suffers pecuniary loss by justifiably relying on the
representation.  Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n.24
(Tex. 2002).

BLyn’s common-law-fraud,
fraud-by-nondisclosure-and-fraudulent-inducement, and negligent-misrepresentation
claims therefore rest on what Short and Forrest communicated or failed to
communicate at the October 5, 2006 and March 4, 2008 meetings in Houston. 
These claims require that BLyn relied on what was or was not communicated and
that BLyn suffered injury as a result.  Thus, the operative facts for these
claims are not events occurring at the shipyard in Alabama, but events
occurring in Houston, Texas. 

Accordingly, the present
case is distinguishable from Moki Mac, in which the alleged
misrepresentations were tangential to the plaintiffs’ core negligence claims.  See
Glencoe Capital Partners II, L.P. v. Gernsbacher, 269 S.W.3d 157, 167 (Tex.
App.—Fort Worth 2008, no pet.) (distinguishing Moki Mac).[6]  Here, the alleged
misrepresentations are the core of BLyn’s tort claims and arguably of its
breach-of-contract claims.

For the preceding reasons we
conclude appellants have minimum contacts with Texas to satisfy due process
requirements.

D.        Exercise
of Personal Jurisdiction Must Comport with Traditional Notions of Fair Play and
Substantial Justice.

If the nonresident defendant
has minimum contacts with the forum state, we must then determine whether
exercise of personal jurisdiction over the nonresident offends traditional
notions of fair play and substantial justice.  See Burger King, 471 U.S.
at 476, 105 S. Ct. at 2184.  In making this determination, we consider (1) the
burden on the defendant, (2) the interests of the forum state in adjudicating
the dispute, (3) the plaintiff’s interest in obtaining convenient and effective
relief, (4) the interstate judicial system’s interest in obtaining the most
efficient resolution of controversies, and (5) the shared interests of the
several states in furthering fundamental substantive social policies.  Nogle
& Black Aviation, Inc. v. Faveretto, 290 S.W.3d 277, 285 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).  When the nonresident defendant has
purposefully established minimum contacts with the forum state, only in rare
instances will the exercise of jurisdiction not comport with fair play and
substantial justice.  Angelou v. African Overseas Union, 33
S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing Guardian
Royal Exch., 815 S.W.2d at 231).

In a special appearance, a
defendant bears the burden of presenting “‘a compelling case that the presence
of some consideration would render jurisdiction unreasonable.’”  Guardian
Royal Exch., 815 S.W.2d at 231 (quoting Burger King, 471 U.S.
at 477, 105 S. Ct. at 2185).  Despite this burden, appellants’ argument in its
brief is negligible.  After listing the factors a court is to consider,
appellants argue only:

In this case the interest of Texas is minimal, especially
since the parties agreed Alabama law would apply.  The two meetings in Texas
are isolated and fortuitous, and could have been just as easily held in
Alabama.  Texas has no special interest in granting relief to a limited
liability company on a cause of action arising under another state’s law for contractual
conduct in another state.

            As discussed above, we have concluded (1)
the two meetings in Texas were not isolated and fortuitous and (2) the
choice-of-law provision is not determinative of jurisdiction.  Finally, the
state of Texas has an obvious interest in providing a forum for resolving
disputes involving its citizens, particularly disputes in which the defendant allegedly
committed a tort in whole or in part in Texas.  D.H. Blair Inv. Banking Corp.
v. Reardon, 97 S.W.3d 269, 278 (Tex. App.—Houston
[14th Dist.] 2002, pet. dism’d w.o.j.).[7]

 

 

 

 

 

V.  Conclusion

Having concluded the Texas
court has personal jurisdiction over appellants, we affirm the order of the
trial court denying appellants’ special appearance.

 

 

 

 

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Sullivan, and Christopher.

 









[1] The contract is not part
of the appellate record.  In response to an order from this court, the district
clerk for Galveston County certified that the contract, which purportedly was attached
as Exhibit A to Defendant’s Special Appearance Challenging Personal
Jurisdiction and Original Answer, had not been actually attached to that
pleading.  Counsel for Horizon at oral argument admitted that the contract was
never filed.





[2] There is nothing in the
record to indicate Horizon filed a “Notice of Past Due Findings of Fact and
Conclusions of Law.”  See Tex. R.
Civ. P. 297.  On appeal Horizon does not challenge the trial court’s
failure to file findings of fact and conclusions of law.





[3] The rule provides in
pertinent part:

Should it appear from the affidavits of
a party opposing the motion that he cannot for reasons stated present by
affidavit facts essential to justify his opposition, the court may order a
continuance to permit affidavits to be obtained or depositions to be taken or
discovery to be had or may make such other order as is just.

Tex. R. Civ. P. 120a(3).





[4] According to the third
amended petition, the relationship began at least as early as April 2006, while
the yacht was still in Texas, when Short and Forrest allegedly represented to
BLyn that Horizon could refurbish and outfit the yacht for an estimated but set
price.  There is also evidence of multiple telephone calls in 2006 and 2007
from Horizon to a number associated with James McCord.  This case therefore
does not involve a one one-time, unsolicited, fortuitous transaction between a
nonresident seller and a Texas resident such as occurred in Michiana Easy
Livin’ Country, Inc. v. Holten, 168 S.W.3d at 781.





[5] A state choice-of-law
provision alone does not mean the parties voluntarily agreed to submit to the
jurisdiction of that state.  See Alenia Spazio S.p.A. v. Reid, 130
S.W.3d 201, 219 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (“By
agreeing to a Texas choice-of-law provision, a party does not avail itself of
any protection from Texas courts or voluntarily submit to personal jurisdiction
in Texas courts, absent an express understanding to that effect.”).





[6] Appellants contend this
case is similar to Marathon Oil Co. v. A.G. Ruhrgas, in which the
appellate court held the presence of a German defendant at three meetings in Houston,
together with correspondence and phone calls to Texas, were insufficient to establish
minimum contacts with Texas.  182 F.3d 291, 295 (5th Cir. 1999).  The
court so held, however, because the record was “devoid of evidence that Ruhrgas
made false statements at the meetings or that the alleged tortious conduct was
aimed at activities in Texas.”  Id.  The court further observed, “Ruhrgas
could not reasonably have expected to be brought into Texas courts because of
its presence at the meetings inasmuch as the meetings and related
communications dealt with the Heimdal Agreement, a contract governed by
Norwegian law and providing specifically for Swedish arbitration.”  Id.  As
discussed above, the present case involves allegations appellants made false
statements in the Texas meetings; and, although the parties agree the contract
which was the subject of the Houston meetings contained an Alabama
choice-of-law provision, there is no indication the contract also included a
forum-selection clause.  Marathon Oil is therefore distinguishable.





[7] In the trial court,
appellants alleged (1) many relevant books and records are located in Alabama;
(2) key witnesses, including those not parties to the case, are located outside
Texas and many in Alabama; (3) all physical work by these defendants was done
in Alabama; (4) the yacht is currently located in Alabama; and (5) a proceeding
in rem against the yacht is pending in federal district court in Alabama.  In
this court, appellants have not further pursed these allegations as support for
an argument that the exercise of jurisdiction in Texas would offend traditional
notions of fair play and substantial justice.