**Richard H. PETRIE, Appellant,**

v.

**Joan P. WIDBY and Helene P. McWilliams, as Co–Executrices of the Estate of Helen M. Petrie, Appellees.**

No. 05–06–00120–CV.

Court of Appeals of Texas, Dallas.

June 14, 2006.

169

Mark Heidenheimer, Mark Heidenheimer, P.L.L.C., McKinney, for Appellant.

Gregory J. Lensing and Mark Douglas Cronenwett, Cowles & Thompson, P.C., Dallas, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

In his sole issue in this interlocutory appeal, Richard Petrie contends the trial court erred by overruling his special appearance. His sisters, Joan Widby and Helene McWilliams, sued him for, among other things, misrepresentations about the transfer of ownership of stock owned by their mother, Helen Petrie. For the reasons that follow, we affirm the order of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Helen Petrie, the parties' mother, owned 4,032 shares of Norfolk Southern Corp. stock valued at approximately $180,000. In 1973, while living in Tennessee, Helen executed her Last Will and Testament in which she devised all of her property to Petrie, Widby, and McWilliams in equal shares. In early 2003, McWilliams asked an attorney whether Helen's will would have to be probated. She told the attorney that all of their mother's assets were in her and her siblings' names except the stock. The attorney advised McWilliams that probate would be unnecessary if Helen added Petrie, Widby and McWilliams' names to the stock certificates. McWilliams told Petrie about the attorney's advice, and Petrie told his sister he would handle the paperwork necessary to add their names to the stock certificates.

In March 2003, Helen was diagnosed with dementia and possibly early-onset of Alzheimer's disease. Four months later,

in July 2003, Helen gave Petrie her power of attorney. She also signed a form transferring ownership of the stock to Petrie and herself as joint tenants with right of survivorship.

Around this same time, Petrie told McWilliams that Norfolk Southern would not add all three of their names to their mother's stock certificates but would only add one name and that he put his name on the stock certificates along with their mother's name. McWilliams testified she trusted her brother and thought when their mother passed away, they would avoid probate and Petrie would split the stock three ways. McWilliams testified that Petrie did not tell her the stock was placed in both his and his mother's names as joint tenants with right of survivorship. A month later, in August 2003, Petrie moved Helen from Tennessee to Texas.

Around March 2004, after the stock had already been transferred to the joint tenancy in Helen's and Petrie's names, Petrie told his sister Widby that he wanted to schedule a meeting in Texas with an attorney to discuss preservation of their mother's assets and that she should attend the meeting. The meeting was held in Dallas, Texas with a Texas attorney, Charles Bedsole. During the meeting, Petrie and Widby discussed their mother's assets with Bedsole and talked about what they needed to do and what the future expenses would be if Helen was placed in an assisted living facility. Widby testified that Bedsole asked Petrie to list Helen's assets, and he listed the stock. She also testified that Petrie represented to the attorney that the stocks "were mother's." Petrie did not disclose during this meeting that the stock was held in Helen's and his names as joint tenants with right of survivorship.

On May 30, 2004, Helen passed away in Texas. She was buried in Tennessee. In June, the family held a memorial service in Collin County, Texas. Following the service, Petrie told McWilliams that he was concerned about having to pay all of the taxes on the stock. McWilliams told him that once the stock was equally distributed, each of them would pay their share and he would not be responsible for all of the taxes. McWilliams testified that Petrie said, "Well, I don't know, I have to check into that." She testified Petrie did not disclose that he owned the stock with Helen as joint tenants with right of survivorship. Sometime that fall, McWilliams asked Petrie whether he needed her help in getting the stock distributed. She testified Petrie told her he was having to sign "one form after another" and "this is all we can do right now."

At some point, McWilliams and Widby learned their brother had received all of the stock and that he refused to distribute their share to them. They filed this lawsuit, seeking a declaration that the power of attorney their mother gave to Petrie was invalid because Helen was incompetent at the time she signed it. They also alleged negligent misrepresentation, fraud, breach of fiduciary duty, conversion, and sought the imposition of a constructive trust. They contended Petrie negligently and intentionally misrepresented the facts surrounding the transfer of ownership of the stock and remained silent when he had a duty to disclose the facts. Petrie filed a special appearance in which he argued the trial court did not have personal jurisdiction over him because he had no continuous and systematic contacts with Texas and because he did not commit a tort in Texas.

### Findings of Fact and Conclusions of Law

After a hearing, the trial court overruled Petrie's special appearance and filed two

sets of findings of fact and conclusions of law. On appeal, Petrie challenges the trial court's order denying his special appearance, arguing there is no or insufficient evidence to support several of the trial court's findings of fact and conclusions of law. For purposes of our decision, we quote findings of fact numbers 15 and 21 [1]:

15. In or around March, 2004, Mr. Petrie and Plaintiff Joan P. Widby, at Mr. Petrie's prompting, retained and met in person with an attorney in Dallas, Texas, Charles Bedsole, to discuss, among other things, the preservation of Ms. Petrie's assets. Defendant made a number of statements during this meeting. Among other statements, Mr. Petrie stated in this meeting, while in the presence of Mr. Bedsole and Plaintiff Joan Widby, that Helen Petrie owned approximately 4032 shares of stock in Norfolk Southern company and that these shares of Stock belong to Helen Petrie. Defendant made this statement in response to an inquiry from Mr. Bedsole into what assets were owned by Ms. Petrie at the time that would then belong to Ms. Petrie's estate upon her passing. Mr. Bedsole solicited this information so that he could determine how such assets could be protected from creditors, estate taxes and any others. Mr. Petrie, despite knowing about the prior execution of the form ostensibly giving himself a joint ownership with right of survivorship in the Stock, did not inform either Mr. Bedsole or Plaintiff Widby that the Stock, due to the execution of that form, was not an asset that would belong to Mr. Petrie's estate upon her passing. Had Mr. Petrie indicated such, Plaintiffs would then have been able to cause documentation to be executed to either change ownership in the Stock back to Ms. Petrie individually or to have Plaintiffs and Defendant be joint owners in the Stock with right of survivorship. Plaintiffs' claims in substantial part thus arise from and relate to Defendant's attendance at and statements and omissions made during the March 2004 meeting in Dallas, Texas.

* * *

21. Ms. Petrie passed away on May 31, 2004 in Collin County, Texas. At the time of her death, Ms. Petrie's residence was: 2401 Country View Lane, No. 333, McKinney, Collin County, Texas, 75069. Several days after Ms. Petrie's passing, Mr. Petrie, while in Collin County, Texas, told Plaintiff Helene P. McWilliams that he was concerned that he, individually, would be required to pay significant taxes on the Stock. Plaintiff Helene P. McWilliams responded that he would not and that each of the Parties would pay their own share of the taxes for the Stock after same was distributed to each of them. Mr. Petrie said nothing further on the subject and again failed to say anything about his having made himself a joint owner of the Stock with right of survivorship pursuant to the alleged Power of Attorney. Had Mr. Petrie informed Plaintiffs of such, they would have had the opportunity to cause necessary documents to be executed to either change ownership in the Stock back to Ms. Petrie individually or to have Plaintiffs and Defendant be joint owners in the Stock with right of survivorship.

Petrie also challenges the trial court's conclusion of law that the exercise of personal jurisdiction over him will not offend

---

1. Based on our analysis of these findings, we do not need to consider the remainder of the findings Petrie challenges in this appeal.

traditional notions of fair play and substantial justice.

### The Parties' Contentions

Petrie contends he is not subject to the trial court's jurisdiction because (1) he does not own a business or conduct business in Texas, (2) all of the transactions related to the transfer of stock from Helen to him were done in Tennessee, (3) the stock certificates remained in Tennessee until Helen's death, and (4) after her death, new stock certificates were issued to him in Kansas.

On the other hand, Widby and McWilliams argue the trial court had both specific and general jurisdiction because Petrie purposefully established minimum contacts with Texas. They argue the trial court had specific jurisdiction based on two misrepresentations and omissions Petrie made while in Texas: (1) in the March 2004 meeting with the attorney in Dallas, Petrie misrepresented the ownership of the stock and failed to disclose that he owned the stock with Helen as joint tenants with right of survivorship; and (2) in the June 2004 conversation in Collin County, Texas, following their mother's memorial service, when McWilliams and Petrie were discussing payment of the taxes on the distribution of the stock, Petrie failed to disclose to McWilliams that he owned the stock with Helen as a joint tenant with right of survivorship. They also argue Petrie had sufficient minimum contacts to support the exercise of general jurisdiction.

### STANDARD OF REVIEW

■ In reviewing a trial court's order denying a special appearance, we review the court's factual findings for legal and factual sufficiency and its legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793–94 (Tex. 2002); *A & J Printing, Inc. v. DSP En-*

ters., L.L.C., 153 S.W.3d 676, 680 (Tex. App.-Dallas 2004, no pet.).

■ Findings of fact in a case tried to the court have the same force and effect as a jury's verdict on special issues. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991); *Lewis v. Dallas Soundstage, Inc.,* 167 S.W.3d 906, 912 (Tex.App.-Dallas 2005, no pet.). We review the trial court's findings of fact by the same standards that we apply in reviewing the evidence supporting a jury's answers. *Anderson,* 806 S.W.2d at 794.

In reviewing the legal sufficiency of a finding of fact, we consider only the evidence and inferences that support the challenged finding and disregard all contrary evidence and inferences unless the evidence could not be rejected by the fact finder. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We uphold the trial court's finding against a legal sufficiency challenge if there is any probative evidence to support the finding. *Anderson,* 806 S.W.2d at 795.

In reviewing a factual sufficiency point of error, we consider all of the evidence. A finding will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is wrong and manifestly unjust. *Lewis,* 167 S.W.3d at 912; *Sierad v. Barnett,* 164 S.W.3d 471, 477 (Tex.App.-Dallas 2005, no pet.).

In so doing, we do not pass on the witnesses' credibility or substitute our judgment for that of the trier of fact. *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.,* 149 S.W.3d 863, 866 (Tex.App.-Dallas 2004, no pet.). In addition, the trial court, as fact finder, is the sole judge of the credibility of the witnesses and may accept or reject all or any part of a witness's testimony. *Lisanti v. Dixon,* 147 S.W.3d 638, 642 (Tex.App.-Dal-

las 2004, pet. denied); *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

We review challenges to a trial court's conclusions of law as a matter of law. *Lewis,* 167 S.W.3d at 912; *Boyd v. Diversified Fin. Sys.,* 1 S.W.3d 888, 890 (Tex.App.-Dallas 1999, no pet.). We independently evaluate the trial court's conclusions of law, and we give limited deference to a trial court's application of law to facts. *Padilla v. Flying J, Inc.,* 119 S.W.3d 911, 913 (Tex.App.-Dallas 2003, no pet.). The trial court abuses its discretion when it misapplies the law. *Id.*

## APPLICABLE LAW

Personal jurisdiction concerns the power of the court to bind a particular person or party. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding). A defendant who claims he is not amenable to process in Texas must file a special appearance to challenge the trial court's exercise of jurisdiction. *See* TEX. R. CIV. P. 120a. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software,* 83 S.W.3d at 793. A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Id.* The exercise of personal jurisdiction over a nonresident is ultimately a question of law that often requires the resolution of factual issues. *Stein v. Deason,* 165 S.W.3d 406, 410 (Tex.App.-Dallas 2005, no pet.).

A Texas court may exercise jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with the due process clause of the United States Constitution. *BMC Software,* 83 S.W.3d at 795; *Deason,* 165 S.W.3d at 411. The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident that does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The definition of "doing business" in Texas includes committing a tort in whole or in part in Texas. *Id.* § 17.042(2). The broad language of the long-arm statute permits a Texas court to exercise jurisdiction as far as the federal constitution will permit. *Michiana Easy Livin' Country v. Holten,* 168 S.W.3d 777, 788 (Tex.2005); *BMC Software,* 83 S.W.3d at 795; *Deason,* 165 S.W.3d at 411. Consequently, in determining whether jurisdiction exists, we need only determine whether the exercise of jurisdiction comports with the due process clause of the federal constitution. *Deason,* 165 S.W.3d at 411.

The due process clause of the federal constitution permits a court to exercise jurisdiction over a nonresident defendant if (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Federal due process requires the defendant to "purposefully avail" himself of the privilege of conducting activity within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Michiana,* 168 S.W.3d at 784. The defendant's activities must (1) justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court, (2) be "purposeful" rather than fortuitous, and (3) show the defendant sought some benefit, advantage, or profit by "availing" himself of the jurisdiction. *Michiana,* 168

S.W.3d at 785. The focus is the "relationship among the defendant, the forum, and the litigation." *Id.* at 790 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868.

 In addition to minimum contacts with the forum state, personal jurisdiction requires that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. Once a court determines that a nonresident defendant has purposefully established minimum contacts, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d 223, 231 (Tex.1991); *Deason,* 165 S.W.3d at 415.

### ANALYSIS

### *Purposeful Availment*

 Petrie argues the trial court's findings of fact numbers 15 and 21 are "legally irrelevant" to the determination of the ownership of the stock. But Widby and McWilliams's claims do not only concern the transfer of ownership of the stock. They also claim fraud and negligent misrepresentation arising from statements and omissions Petrie made while he was in Texas. And a nonresident who travels to Texas and makes statements alleged to be fraudulent is subject to specific jurisdiction in Texas. *Deason,* 165 S.W.3d at 415; *see American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806–07 (Tex.2002) (specific jurisdiction exists when defendant's contacts with forum are purposeful and cause of action arises from or relates to those contacts).

At the hearing on the special appearance, Widby testified it was Petrie's idea to have a meeting in Texas with an attorney to discuss the preservation of Helen's assets. At the meeting, Petrie told the attorney the stock was Helen's. When he listed Helen's assets for the attorney, he listed the stock. Widby testified Petrie failed to tell her or the attorney that the stock was actually owned by Helen and Petrie as joint tenants with right of survivorship. Additionally, McWilliams testified that during a discussion after Helen's memorial service in Texas, Petrie expressed concern about having to pay all of the taxes on the stock. When she told him she and Widby would pay their share, he failed to tell her that the stock was in his and Helen's names as joint tenants with right of survivorship. Petrie did not deny that he made these statements and did not deny that he failed to disclose this information. He just claims they are "irrelevant." [2] We disagree.

Petrie purposefully availed himself of the laws of Texas through these purposeful contacts with the State. And Petrie should have realized that the consequences of having made the representations or omissions in Texas could reasonably lead to being haled into court in Texas. *Deason,* 165 S.W.3d at 415. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's findings of fact numbers 15 and 21.

**2.** In his reply brief, Petrie argues that Widby and McWilliams did not cite any authority that stated he had a duty to disclose the information about the stock transfer. But in reviewing an order denying a special appearance, we do not concern ourselves with the merits of the plaintiffs' claims. *See Michiana,* 168 S.W.3d at 791–92; *Deason,* 165 S.W.3d at 414.

*Fair Play and Substantial Justice*

 Petrie also challenges the trial court's conclusion of law that the assumption of jurisdiction over Petrie will not offend traditional notions of fair play and substantial justice. In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Guardian*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

Appellant did not make any argument or cite to the record or authority to support this contention in his initial brief. In his reply brief, Petrie attempts to argue the assumption of jurisdiction would offend traditional notions of fair play and substantial justice. He contends this is so because (1) all of his contacts in Texas occurred at least one year and five months before plaintiffs filed suit, (2) the contacts are too attenuated to support jurisdiction, (3) the contacts were random in nature, (4) none of the contacts support the conclusion that Petrie could reasonably anticipate being called into a Texas court, and (5) he was not seeking a benefit, advantage, or profit regarding ownership of the stock when he engaged in these activities. But these are factors to consider in determining whether Petrie purposefully availed himself of the laws of the State of Texas, the first prong of the analysis. *See Michiana*, 168 S.W.3d at 784–85. We have already determined that he did.

Additionally, Petrie does not argue or cite authority for the factors we must consider in making the determination of whether the exercise of jurisdiction over a defendant comports with traditional notions of fair play and substantial justice. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (setting out factors to consider). And the allegation that Petrie committed a tort in Texas leads us to conclude that the exercise of specific jurisdiction would not offend traditional notions of fair play and substantial justice. *See Deason*, 165 S.W.3d at 415; *Morris v. Kohls–York*, 164 S.W.3d 686, 694–95 (Tex. App.-Austin 2005, pet. dism'd). As a result, the trial court did not err when it concluded that exercising jurisdiction over Petrie will not offend traditional notions of fair play and substantial justice.

In summary, Widby and McWilliams met their burden of presenting sufficient jurisdictional facts by alleging Petrie committed a tort in Texas and Petrie did not negate all bases for the exercise of jurisdiction. We overrule Petrie's sole issue.

### CONCLUSION

We conclude the evidence is legally and factually sufficient to support the trial court's order denying Petrie's special appearance. Because we conclude the trial court had specific jurisdiction over Petrie, we do not decide whether Petrie's contacts with Texas would also support the assumption of general jurisdiction. Accordingly, we affirm the trial court's order denying Petrie's special appearance.